## Commonwealth of Pennsylvania, Department of Environmental Resources *v.* Apple Valley Racquet Club, Appellant.

Argued June 4, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Robert B. Dornhaffer,* with him *Thomas, Shafer, Walker, Dornhaffer & Swick,* for appellant.

*Eric Pearson,* Special Assistant Attorney General, for appellee.

OPINION BY JUDGE WILKINSON, July 17, 1975:

This case presents two questions; the first and important one is whether the Public Bathing Law, Act of June 23, 1931, P.L. 899, *as amended,* 35 P.S. §672, et seq., applies to a swimming pool owned and operated by a membership club for the use and enjoyment of the club members and their invited guests. The second question is whether, if the Act applies, did the Environmental Hearing Board abuse its discretion and act in an arbitrary and unreasonable manner in affirming the order of the Department of Environmental Resources which ordered appellant to cease operation of the pool and drain the same and to not reopen it until appellant is in possession of a valid bathing place permit?

The Public Bathing Law provides, in Section 2, 35 P.S. §673:

"Definitions, as used in this act:

"(1) A public bathing place shall mean any place open to the public for amateur and professional swimming or recreative bathing, whether or not a fee is charged for admission or for the use of said place, or any part thereof.

"(2) A swimming pool shall mean a place in the open or enclosed in any structure or building for the purpose of admitting two or more persons to bathe or swim together.

"(3) A natatorium shall mean a place in any building, or parts of buildings, maintained and conducted by any person or persons, club, corporation, association, or society or other organization, where fees are charged to public or member patrons for swimming, bathing, turkish, swedish or other forms of bathing.

"(4) Department shall mean the Department of Health of this Commonwealth."

Section 5, 35 P.S. §676, provides in part:

"Permits.—

"(a) It shall be unlawful for any person or persons, club, firm, corporation, partnership, institution, association, municipality or county to construct, add to or modify, or to operate, or continue to operate, any public bath house, bathing, swimming place or swimming pool, notatorium, or any structure intended to be used for bathing or swimming purposes, indoors, or outdoors, without having first obtained a permit so to do or being in possession of an unrevoked permit.

"(b) Permits shall be obtained in the following manner: Any person or persons, firm, corporation, copartnership, associations, institution, municipality or county, or other body, desiring to construct, add to or modify, or to operate and maintain any public bathing place, bath house, bathing or swimming pool, natatorium, place or structure, indoors or outdoors, intended to be used for hire for bathing or swimming within the Commonwealth, shall file with the department, on blanks prepared by it, an application for permission to operate such bathing place or swimming pool."

Appellant would have this Court take the position that the Legislature intended to apply these requirements to membership clubs only when the swimming pool is made available to the public on an unrestricted basis,

come one, come all, save only that a fee might be charged. Such a position might have been tenable and indeed was taken by the Common Pleas Court and a divided Superior Court with regard to public eating and drinking facilities in *Commonwealth, Human Relations Commission v. Loyal Order of Moose, Lodge No. 107,* 220 Pa. Superior Ct. 356, 286 A. 2d 374 (1971), but was expressly discarded by a unanimous Supreme Court of Pennsylvania, at 448 Pa. 451, 294 A. 2d 594 (1972). In that case, the Pennsylvania Supreme Court ruled that a membership club, while "private" when it restricted its facilities to its members only, became "public" when any member of the public could be admitted on the invitation of any member. It is as simple as that. It is clear from the stipulation of facts, as well as the findings of fact, that there are 45 shareholders or members of appellant, a nonprofit corporation[1]. Each shareholder or member is entitled to sponsor as many guests as he chooses, restricted only to paying a 50 cents admission charge.

Indeed, *Lodge No. 107, supra,* would seem to be a much stronger case than the instant one for ruling that the Act did not apply, since the Act there involved has an express exclusionary clause applying to fraternal corporations or associations. Section 5, the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §955 (Supp. 1974-1975).

Appellant argues that it is not a membership type of club open to any member of the public to join upon payment of dues, but rather is a group of co-owners, familes and guests who are the "sole users" of the pool. We do not understand this argument, for the stipulation of facts states that appellant is a nonprofit corporation organized and existing under the rules of the Commonwealth, and that the corporation owns the pool "for the exclusive use and enjoyment by the shareholders and

---

1. The share certificate in the record indicates that 200 members or shareholders are authorized.

guests of shareholders." The fact that the member also has a share of stock which he may transfer under certain circumstances would not seem to have any bearing on whether the unrestricted right to sponsor guests at the pool makes the pool a public facility.

No good purpose would be served by an extended discussion of similar holdings in other jurisdictions. Suffice it to say that they take an even broader view of the meaning of "public," applying it even when admission is restricted to members. *Askew v. Parker*, 151 Cal. App. 2d 759, 312 P. 2d 342 (Cal. Ct. App. 1957) ; *Raponotti v Burnt-Mill Arms, Inc.*, 113 N. J. Super. 173, 273 A. 2d 372 (1971), where the citations from many other jurisdictions are collected.

As to the second issue, since appellant lacks a permit, it is quite clear that it was not an abuse of discretion to order the pool closed. We would observe that if and when an application is made by appellant for a permit, it would seem that the Department of Environmental Resources should take into consideration, in applying its guideline requirements, that this pool was built in good faith under the honest belief that the Act did not apply, and that the record appears to show that in all fundamental matters of construction and operation, the pool and attendant facilities would seem to be in substantial compliance.

Accordingly, we enter the following

ORDER

Now, July 17, 1975, the order of the Environmental Hearing Board, dated October 23, 1974, affirming the June 20, 1974 order of the Pennsylvania Department of Environmental Resources, which ordered appellant to cease operation of its pool, drain the same, and not to reopen until it is in possession of a valid bathing place permit, is affirmed.

President Judge BOWMAN concurs in the result only.